FILED
LODGED
ENTERED
RECEIVED

NOV 28 2023

RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY
DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

UNITED STATES OF AMERICA ex *rel.*
SIDESOLVE LLC,

                Plaintiff,

    v.

ECONOMIC OPPORTUNITY
INSTITUTE,

                Defendant.

NO. 2:23-cv-01828 JNW

COMPLAINT AND JURY DEMAND

**Filed Under Seal**
pursuant to
31 U.S.C. § 3730(b)(2)

## NATURE OF THE ALLEGATIONS

1.    Relator Sidesolve LLC brings this action on behalf of itself and the United States of America against Defendant Economic Opportunity Institute for violations of the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2.    This action seeks to recover funds that were loaned to Defendant through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of false applications.

3.    Sidesolve LLC is a company that uses data to investigate large-scale corporate fraud. Its goal is to use the technology it is developing to protect individuals on private healthcare plans. It is currently developing its technology using public databases. It uses computational statistics to match entities across multiple resources such as databases, social media, corporate filings, and

**COMPLAINT AND JURY DEMAND - 1**

**Teller Law**
300 Lenora St., #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

other sources. From this broader picture, it finds fraud leads, which it follows up with a more traditional manual investigation. In sum, Sidesolve LLC uses its expertise and proprietary technology to both collect the scattered pieces of the fraud puzzle and also to put them together into a complete picture of the alleged fraud.

4.      While searching for potential PPP loan fraud in data released by the SBA, Sidesolve came across Defendant Economic Opportunity Institute, a Think Tank that had applied for a Second Draw PPP loan of $150,000. The loan was forgiven in its entirety, plus interest.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

6.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as Defendant transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## THE PAYCHECK PROTECTION PROGRAM

7.      During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

8.      Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

9.      The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided

**COMPLAINT AND JURY DEMAND - 2**

by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

10.     The Economic Aid Act (P.L. 116-260, in the Consolidated Appropriations Act of 2021), authorized and funded a Second Draw PPP Loan program.

11.     For Second Draw PPP Loans, lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the amount of five (5) percent for loans of more than $50,000 and not more than $350,000, and in the amount of three (3) percent for loans above $350,000.

12.     Each borrower certified on the Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

13.     Borrowers were able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities.

## PPP REGULATIONS FOR THINK TANKS

14.     The SBA opened applications for Second Draw PPP Loans on January 15, 2021.

15.     Paragraph 7(a)(37)(A)(iv)(III)(bb) of the Small Business Act, added by the Economic Aid Act (P.L. 116-260, in the Consolidated Appropriations Act of 2021), which authorized and funded the Second Draw program, excluded from eligibility:

> any business concern or entity primarily engaged in political or lobbying activities, which shall include any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents.

(This definition shall hereinafter be referred to generally as "Think Tanks.")

16.     The Interim Final Rule for the Second Draw Loans, effective January 12, 2021 and published January 14, 2021, thrice indicated that Think Tanks were not eligible for Second Draw Loans: Section C. Excluded Entities (86 FR 3715) (describing Think Tanks as a "prohibited

**COMPLAINT AND JURY DEMAND - 3**

**Teller Law**
300 Lenora St., #1471
Seattle, WA  98121
(206) 324-8969   steve@stellerlaw.com

1  borrower"); IV(e) Who is not eligible for a Second Draw PPP Loan? (86 FR 3718-19); and

2  IV(g)(3)(ii)(E) (86 FR 3721) (requiring certification that applicant is not a Think Tank).

3  17.    Accordingly, every version of the Second Draw Borrower Application Form, starting

4  January 8, 2021, required that "The authorized representative of the Applicant must certify in

5  good faith to all of the below by initialing next to each one" that "The Applicant is not a business

6  concern or entity primarily engaged in political or lobbying activities, including any entity that is

7  organized for research or for engaging in advocacy in areas such as public policy or political

8  strategy or otherwise describes itself as a think tank in any public documents." Defendants could

9  not have obtained a Second Draw PPP Loan without knowingly making this false certification.

10  18.    After they were permitted to receive First Draw funding, Congress expressly determined

11  that Think Tanks should be excluded from the Second Draw PPP Loans. Accordingly, Defendant

12  should be required to repay its individual loan forgiveness and processing fees, plus penalties.

13  <u>**PARTIES**</u>

14  19.    Relator Sidesolve LLC is a company that uses data to investigate scaled corporate fraud.

15  20.    Defendant Economic Opportunity Institute ("EOI") is a registered non-profit organization

16  under the IRS code section 501(c)(3). Its principal address is 603 Stewart St., Suite 715, Seattle,

17  WA 98101.

18  <u>**FACTUAL ALLEGATIONS**</u>

19  21.    On February 3, 2021, Economic Opportunity Institute was approved for a Second Draw

20  PPP loan in the amount of $150,000 by Beneficial State Bank. The amount forgiven was

21  $150,949.

22  22.    Economic Opportunity Institute listed NAICS code 611710 (educational support services)

23  on its PPP loan application.

24  23.    According to EOI's 2020 Form 990:

25          The Economic Opportunity Institute is an independent, nonpartisan,
           non-profit public policy center using research, education and

**COMPLAINT AND JURY DEMAND - 4**

> advocacy to shape public debate and advance new policy ideas that help build an economy that works for everyone. EOI's mission is to restore the promise of the middle class by advancing public policies that promote educational opportunity, good jobs, healthy families and workplaces, and a dignified retirement for all.

24.    This description closely mirrors the SBA's Second Draw exclusion: EOI is "organized for research or for engaging in advocacy in areas such as public policy."

25.    A June 2001 article in The Nation magazine—reprinted on EOI's website—explains that EOI considers itself to be a "progressive policy institute… in which policy development meets real-world advocacy." According to EOI, its "job is to develop populist majoritarian policy and push that policy forward into the public eye."

26.    This "policy push" includes a "legislative agenda" published on EOI's website. For example, in a December 18, 2020 article titled "Our 2021 legislative priorities," EOI discussed five public policy issues in the state of Washington and the positions for which it was advocating. The same day, EOI published an article dissecting the governor's 2021 budget proposal while advocating for "bolder investments in child care, health care access, higher education, and other areas, using additional progressive revenue sources."

27.    Other articles advocated for positions on specific legislation, such as a January 2021 article endorsing the Postpartum Medicaid Expansion Bill (SB 5086).

28.    In February 2016, EOI's Policy Director spoke to the Washington Senate Commerce and Labor Committee in opposition to SB 6578 and SSB 6087, bills meant to limit paid sick days and minimum wage ordinances.

29.    EOI's Annual Reports similarly emphasize its lobbying and advocacy efforts. For example, its 2020 Annual Report's section on "What We Do" begins by emphasizing its work "to advance public policies." 2020 Highlights include "support[ing] implementation of Washington Paid Family and Medical Leave"; helping to "lead a coordinated response of advocates in Washington to push for new sources of progressive revenue to address the COVID crisis and

**COMPLAINT AND JURY DEMAND - 5**

**Teller Law**
300 Lenora St., #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

1   decades of under-investment in critical public services"; "develop[ing] proposals for the nation's

2   first wealth tax, a more progressive estate tax, and a millionaire's tax"; and "mov[ing] public

3   investment in childcare to the forefront of the legislative conversation."

4   30.   EOI's 2020 Form 990 lists four of its largest programs, each of which consists of

5   "publication of research" related to public policy; "dissemination of said research"; and

6   "advocacy for said policies in local and state legislative bodies."

7   31.   EOI checked the "Yes" box for the question "Did the organization engage in lobbying

8   activities, or have a section 501(h) election in effect during the tax year?" As a result, it had to

9   file a Schedule C, which indicates that in 2020, EOI spent $1,134 in "total lobbying expenditures

10   to influence public opinion (grass roots lobbying)" and $7,867 in "total lobbying expenditures to

11   influence a legislative body (direct lobbying)." The form also shows that from 2017 through 2020,

12   EOI had $34,858 in total lobbying expenditures.

13   32.   EOI has referred to itself as a think tank in public documents. For example, in July 2015,

14   EOI posted a blog with the headline "What does a public policy think tank like EOI actually *do*,

15   anyway?" The blog linked to EOI's 2014 Annual Report.

16   33.   Similarly, in an advertisement for a 2013 fundraising dinner, EOI noted that "[a]ll

17   proceeds will benefit the Economic Opportunity Institute, Washington's only think tank for the

18   middle class." Under the headline "What do 'think tanks' think about, anyway," a 2009 blog

19   posted an interview with "representatives from five Washington state think tanks," including EOI.

20   34.   Today, EOI lists "Think Tank" as the organization's "industry" on its LinkedIn page.

21   35.   EOI has also reposted others referring to it as a think tank, such as in a January 2010 blog

22   posting a blurb from an article referring to it as "a liberal think-tank." An August 2017 blog quotes

23   a Seattle Times article that also refers to EOI as a "liberal public-policy think tank."

24   36.   EOI checks all the SBA's boxes for what qualifies as a Think Tank when it need only

25   check *any* of the boxes. It is primarily engaged in political and lobbying activities, it is organized

**COMPLAINT AND JURY DEMAND - 6**

for research and advocacy in public policy, and it refers to itself as a think tank in public documents. For these reasons, EOI was not eligible for a Second Draw PPP Loan.

**COUNT I**
**VIOLATIONS OF 31 U.S.C. § 3729**

37.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

38.    As set forth above, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

39.    As set forth above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

40.    Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

41.    Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

**PRAYER FOR RELIEF**

WHEREFORE, Relator prays for judgment against Defendant:

On behalf of the United States:

a)  awarding the United States treble damages sustained by it for each of the false claims;

b)  awarding the United States a maximum civil penalty for each of the false claims, records, or statements;

c)  awarding Relator the maximum share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

d)  awarding Relator litigation costs, expenses, and reasonable attorneys' fees; and

e)  granting such other relief as the Court may deem just and proper.

**COMPLAINT AND JURY DEMAND - 7**

# DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

DATED this 28th day of November, 2023.

s/ Stephen Teller
Stephen A. Teller, WSBA #23372
Local counsel for Relator

Jason Marcus (applying for *pro hac vice*)
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Rd., Suite 660
Atlanta, Georgia 30326
Tel: (770) 988-5035
Fax: (678) 648-5544
Jason@FCACounsel.com

Attorneys for Relator Sidesolve LLC

**COMPLAINT AND JURY DEMAND - 8**